**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 14-2006**

─────────────

GREGORY THOMAS BERRY; SUMMER DARBONNE, on behalf of herself
and all others similarly situated; RICKEY MILLEN, on behalf
of himself and all others similarly situated; SHAMOON SAEED,
on behalf of himself and all others similarly situated;
ARTHUR B. HERNANDEZ, on behalf of himself and all others
similarly situated; ERIKA A. GODFREY, on behalf of herself
and all others similarly situated; TIMOTHY OTTEN, on behalf
of himself and all others similarly situated,

   Plaintiffs – Appellees,

  and

LEXISNEXIS RISK AND INFORMATION ANALYTICS GROUP, INC.;
SEISINT, INC.; REED ELSEVIER, INC.,

   Defendants – Appellees,

  v.

ADAM E. SCHULMAN,

   Party-in-Interest - Appellant.

------------------------------

JAMES TAYLOR LEWIS GRIMMELMANN,

   Amicus Supporting Appellants.

─────────────

**No. 14-2050**

─────────────

GREGORY THOMAS BERRY; SUMMER DARBONNE, on behalf of herself
and all others similarly situated; RICKEY MILLEN, on behalf
of himself and all others similarly situated; SHAMOON SAEED,

on behalf of himself and all others similarly situated; ARTHUR B. HERNANDEZ, on behalf of himself and all others similarly situated; ERIKA A. GODFREY, on behalf of herself and all others similarly situated; TIMOTHY OTTEN, on behalf of himself and all others similarly situated,

Plaintiffs – Appellees,

and

LEXISNEXIS RISK AND INFORMATION ANALYTICS GROUP, INCORPORATED; SEISINT, INCORPORATED; REED ELSEVIER, INCORPORATED,

Defendants – Appellees,

v.

MEGAN CHRISTINA AARON and the Aaron Objectors,

Party-in-Interest - Appellant.

------------------------------

JAMES TAYLOR LEWIS GRIMMELMANN,

Amicus Supporting Appellants.

———————————

**No. 14-2101**

———————————

GREGORY THOMAS BERRY; SUMMER DARBONNE, on behalf of herself and all others similarly situated; RICKEY MILLEN, on behalf of himself and all others similarly situated; SHAMOON SAEED, on behalf of himself and all others similarly situated; ARTHUR B. HERNANDEZ, on behalf of himself and all others similarly situated; ERIKA A. GODFREY, on behalf of herself and all others similarly situated; TIMOTHY OTTEN, on behalf of himself and all others similarly situated,

Plaintiffs – Appellees,

and

LEXISNEXIS RISK AND INFORMATION ANALYTICS GROUP, INCORPORATED; SEISINT, INCORPORATED; REED ELSEVIER, INCORPORATED,

Defendants – Appellees,

v.

SCOTT HARDWAY and the Hardway Objectors,

Party-in-Interest - Appellant.

------------------------------

JAMES TAYLOR LEWIS GRIMMELMANN,

Amicus Supporting Appellants.

───────────

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, Senior District Judge. (3:11-cv-00754-JRS)

───────────

Argued: September 15, 2015          Decided: December 4, 2015

───────────

Before KING and HARRIS, Circuit Judges, and George J. HAZEL, United States District Judge for the District of Maryland, sitting by designation.

───────────

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge King and Judge Hazel joined.

───────────

**ARGUED**: Richard Monroe Paul, III, PAUL McINNES LLP, Kansas City, Missouri, for Appellants. William Walter Wilkins, NEXSEN PRUET, Greenville, South Carolina; Joseph R. Palmore, MORRISON & FOERSTER LLP, Washington, D.C., for Appellees. **ON BRIEF**: Ashlea G. Schwarz, PAUL McINNES LLP, Kansas City, Missouri; Samuel Issacharoff, New York, New York; Thomas W. Bevan, Patrick M. Walsh, BEVAN & ASSOCIATES LPA, INC., Boston Heights, Ohio; Edwin F. Brooks, EDWIN F. BROOKS, LLC, Richmond, Virginia; Adam E. Schulman, CENTER FOR CLASS ACTION FAIRNESS, Washington, D.C., for Appellants. Michael A. Caddell, Cynthia B. Chapman, CADDELL

& CHAPMAN, Houston, Texas; Kirsten E. Small, Andrew A. Mathias, NEXSEN PRUET, Greenville, South Carolina; Leonard A. Bennett, Matthew J. Erausquin, CONSUMER LITIGATION ASSOCIATES, P.C., Newport News, Virginia; James A. Francis, David Searles, John Soumilas, FRANCIS & MAILMAN P.C., Philadelphia, Pennsylvania; Dale W. Pittman, THE LAW OFFICE OF DALE W. PITTMAN, P.C., Petersburg, Virginia; Ronald I. Raether, Jr., FARUKI, IRELAND & COX, PLL, Dayton, Ohio; David Neal Anthony, TROUTMAN SANDERS, LLP, Richmond, Virginia; Marc A. Hearron, Washington, D.C., James F. McCabe, San Francisco, California, Michael B. Miller, MORRISON & FOERSTER LLP, New York, New York, for Appellees. Daniel F. Goldstein, Matthias L. Niska, BROWN GOLDSTEIN & LEVY, LLP, Baltimore, Maryland; James Grimmelmann, Professor of Law, Francis King Carey School of Law, UNIVERSITY OF MARYLAND, Baltimore, Maryland, for Amicus Curiae.

———————

PAMELA HARRIS, Circuit Judge:

The class action settlement at issue in this appeal is "the culmination of years of litigation and negotiations" between class counsel and the defendants, LexisNexis Risk and Information Analytics Group, Inc.; Seisint, Inc.; and Reed Elsevier Inc. (together, "Lexis"). Berry v. LexisNexis Risk & Info. Analytics Grp., Inc., No. 3:11-CV-754, 2014 WL 4403524, at *1 (E.D. Va. Sept. 5, 2014). The dispute centers around Lexis's sale of personal data reports to debt collectors. According to the plaintiffs, Lexis has failed to provide the protections of the Fair Credit Reporting Act (the "FCRA" or the "Act"), 15 U.S.C. § 1681, et seq., in connection with its reports. According to Lexis, its data reports do not qualify as "consumer reports" within the meaning of the FCRA, and so it is not required to comply with the Act.

After three separate lawsuits, extensive discovery, and a long series of mediation conferences, a deal was struck. Lexis would make sweeping changes to its product offerings in order to protect consumer information, and in exchange, the class members would release any statutory damages claims under the Act. The district court certified a settlement class under Rule 23(b)(2) of the Federal Rules of Civil Procedure and approved the settlement, finding that it would make Lexis "the industry leader among data aggregation companies in the protection of

5

customer information provided to debt collectors." Berry, 2014 WL 4403524, at *3.

Now, a group of class members claiming the right to opt out of the settlement class and pursue statutory damages individually (the "Objectors") seeks to undo that settlement.[1] We find no error in the release of the statutory damages claims as part of a Rule 23(b)(2) settlement, and no abuse of discretion in the district court's approval of the settlement agreement. Accordingly, we affirm the district court's decision in full.

## I.

### A.

The FCRA regulates the collection and dissemination of certain consumer data bearing on credit eligibility. Its protections are focused on the sale of "consumer reports" – communications (1) containing information related to any one of seven specific consumer characteristics (including credit standing and worthiness and other personal information), which are (2) prepared to assist buyers in making certain eligibility

---

[1] The Objectors consist of three separate groups of class members objecting to the settlement: the "Aaron Objectors," 20,206 members of the 23(b)(2) class; the "Hardway Objectors," another 7,289 class members; and Adam Schulman, a class member representing himself.

determinations, including credit eligibility. 15 U.S.C. § 1681a(d).

The Act imposes various obligations on "consumer reporting agencies" – companies that regularly prepare "consumer reports," 15 U.S.C. § 1681a(f) – and provides a wide panoply of protections for consumers. For example, consumer reports may be furnished only for certain uses, such as credit transactions. Id. at § 1681b(a)(3)(A). Consumers are given the right to view the information in their files, id. at § 1681g(a)(1), and if they dispute the information they find, the consumer reporting agency must conduct a reasonable investigation into the information's accuracy, id. at § 1681i(a)(1)(A). None of those protections applies, however, unless and until a "consumer report" has been issued.

Lexis is a data broker that sells an identity report called Accurint® for Collections ("Accurint"), used to locate people and assets, authenticate identities, and verify credentials. The Accurint database contains information on over 200 million people, and millions of Accurint reports are sold each year. For years, Lexis sold Accurint without complying with the FCRA, on the theory that Accurint is not a "consumer report" that triggers the Act's protections. Whether Accurint reports in fact constitute "consumer reports" under the FCRA is the crux of the parties' dispute.

**B.**

Class counsel and Lexis have a long history. This is the third national putative class action brought by counsel against Lexis, each alleging essentially the same thing: that Lexis violated the FCRA by selling Accurint reports without affording FCRA protections. Neither of the two prior suits resulted in any class settlement or court-ordered relief. In Graham v. LexisNexis Risk & Information Analytics Management Group, Inc., No. 3:09-cv-00655-JRS (E.D. Va. Jan. 21, 2011), the plaintiffs dismissed the claims after Lexis moved to dismiss for lack of standing. And in Adams v. LexisNexis Risk & Information Analytics Group, Inc., No. 08-4708 (D.N.J. October 28, 2010), the parties settled after the district court denied Lexis's motion for judgment on the pleadings. Over the course of these lawsuits, class counsel and Lexis negotiated numerous times, including at least nine in-person mediation conferences and many more telephone conferences.

Throughout this litigation, class counsel endeavored to prove not only that Lexis violated the FCRA, but also that it did so "willfully." That is because in addition to creating liability for actual damages sustained by an individual as a result of a violation, 15 U.S.C. § 1681o(a), the FCRA provides for statutory damages of between $100 and $1,000 for willful violations, id. at § 1681n(a), which would be available to all

8

class members.  But willfulness is a high standard, requiring knowing or reckless disregard of the FCRA's requirements. Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 57, 69 (2007). Unless Lexis was "objectively unreasonable," id. at 69, in concluding that its Accurint reports were not "consumer reports" subject to the FCRA, then there would be no liability for statutory damages.

The Adams court's treatment of the willfulness issue, in particular, is relevant to the case we review today.  Class counsel focused on the district court's refusal to dismiss the case on the pleadings because it would be "premature . . . to say that [the p]laintiff can produce no evidence to support [a willfulness] finding," No. 08-4708, 2010 WL 1931135, at *10 (D.N.J. May 12, 2010).  But Lexis pointed to an Opinion Letter issued by the Federal Trade Commission in 2008 declaring that Accurint reports are not "credit reports" under the FCRA, see FTC Opinion Letter to Marc Rotenberg at 1 n.1 (July 29, 2008) ("FTC Opinion Letter" or "Opinion Letter"), and argued that it cannot be "objectively unreasonable" to adopt the view of the federal agency responsible for enforcing the FCRA.  And indeed, as Lexis noted, the Adams court subsequently clarified that unless discovery showed that the FTC had reversed the view taken in its 2008 Opinion Letter, the Adams plaintiffs would have difficulty showing willfulness.

9

## C.

This case began in 2011, when the named plaintiffs (the "Plaintiffs" or the "Class Representatives"), individuals who were the subject of Accurint reports, filed a putative class action against Lexis. The complaint alleged that Lexis violated the FCRA in three ways: by selling Accurint reports without first ensuring that buyers were purchasing the reports for uses permitted by the FCRA, refusing to allow consumers to view their Accurint reports, and refusing to investigate when consumers disputed information in Accurint reports. The Plaintiffs proposed three classes to match: an "Impermissible Use" class, including all persons listed in Accurint reports sold by Lexis; and "File Request" and "Dispute" classes, limited to consumers who interacted more directly with Lexis and were refused access to their Accurint reports or denied investigations when they filed disputes. The Plaintiffs sought both actual and statutory damages. But – as has become important to the Objectors' argument – because the FCRA does not provide expressly for an injunctive remedy in private actions, they did not seek injunctive relief.

Over a year later, after months of discovery and a series of negotiations with the aid of "three highly skilled mediators," including two federal judges, Berry, 2014 WL 4403524, at *14, the Plaintiffs and Lexis at last reached a

10

settlement agreement (the "Agreement"). Instead of the three classes contemplated by the Plaintiffs' complaint, the Agreement calls for just two. The first, not directly at issue here, consists of approximately 31,000 individuals who actively sought to treat Accurint reports as consumer reports under the FCRA by requesting copies or attempting to dispute information. Under the Agreement, those class members will release all potential FCRA claims against Lexis in exchange for financial compensation of approximately $300 per person. The district court's certification of that class (the "(b)(3) Class") under Federal Rule of Civil Procedure 23(b)(3) and approval of its settlement are not challenged on appeal.

The focus of this controversy is the second class, certified under Federal Rule of Civil Procedure 23(b)(2) (the "(b)(2) Class"). Much larger than the first class, the (b)(2) Class includes all individuals in the United States about whom the Accurint database contained information from November 2006 to April 2013 – roughly 200 million people.[2] And the settlement

_____

[2] Given what is effectively a nationwide class, we must contend with the possibility that we ourselves are among the members of the (b)(2) Class. At oral argument, counsel for Lexis and for the Plaintiffs took the position that we are not class members under a fair and practical reading of the Agreement, which excludes from the class "the presiding judge in the action and his staff, and all members of their immediate family." J.A. 108. Counsel for the Objectors did not disagree and also volunteered to waive any potential conflict. While

11

provided the (b)(2) Class under the Agreement differs significantly from that provided the (b)(3) Class. First, unlike members of the (b)(3) Class, (b)(2) Class members retain the right to seek actual damages individually under the FCRA, though they waive any claim for statutory damages, as well as punitive damages. And second, what (b)(2) Class members receive in exchange is not monetary but purely injunctive relief – a fundamental change in the product suite that Lexis offers the debt-collection industry that "will result in a significant shift from the currently accepted industry practices." Berry, 2014 WL 4403524, at *3.

Specifically, under the Agreement, Lexis is to divide its Accurint report into two new products. The first, "Collections Decisioning," will be treated as falling within the FCRA's "consumer report" definition. This means, among other things, that Collections Decisioning reports can be used only for

---

those representations may be sufficient to resolve any problem that otherwise would arise, we need not rely on them here. We agree with the view expressed in the Compendium of Selected Opinions for the Committee on Codes of Conduct that "[a] judge's inclusion as a class member in a Rule 23(b)(2) class action seeking only injunctive and declaratory relief, in which a substantial segment of the general public are also members, does not require recusal, unless the judge has an interest in the action unique from that of members of the general public included in the class." See Compendium § 3.1-6[4](d). Because any interest we may have in this litigation is common to the general public, recusal is not required.

permissible purposes under the FCRA, and so will be available only to buyers that have completed a detailed credentialing process. Consumers also will have the right to view the information in their reports, free of charge in certain circumstances, and to dispute information they believe to be inaccurate, all as provided by the FCRA.

The second suite of products, called "Contact & Locate," is intended only for the "limited purpose of finding and locating debtors or locating assets," J.A. 121, and will not include any of the "seven characteristic" information that makes a communication a "consumer report." Id. Accordingly, "Contact & Locate" is not treated as subject to the FCRA, and the Agreement stipulates that "the Contact & Locate suite of products and services do not constitute 'consumer reports' as that term is defined under the FCRA." J.A. 123. Nevertheless, consumers will be given certain FCRA-like protections in connection with Contact & Locate. For example, consumers will be able to obtain free copies of their Contact & Locate reports once each year, and they will be able to submit statements disputing the information they find.

In April 2013, the district court granted the parties' joint motion for preliminary certification of two classes for settlement purposes. The Objectors filed motions challenging certification of the (b)(2) Class and the terms of the

13

settlement itself.  After a day-long final approval hearing at which the parties and the Objectors presented argument, the district court certified the (b)(2) Class and approved the settlement.

Certification of a settlement class under Rule 23(b)(2) was appropriate, the court ruled, because the relief sought by the class is injunctive, rather than monetary, and "indivisible" in that it "will accrue to all members of the Rule 23(b)(2) class." Berry, 2014 WL 4403524, at *11.  The court dismissed the Objectors' claim that a lack of opt-out rights from the mandatory (b)(2) Class precluded certification, emphasizing that class members retained the right to sue for individualized relief in the form of actual damages and waived only non-individualized statutory damages, uniform as to all class members.  Id. at *11-12.

The district court also approved the terms of the Agreement as "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e)(2).  According to the court, no concerns as to fairness were raised by the process leading up to the Agreement, involving "arm's-length negotiations by highly experienced counsel after full discovery was completed."  Id. at *14.  But most important, the court held, was the "relative strength" of the parties' claims and defenses.  Id. at *15.  Given the 2008 FTC Opinion Letter deeming Accurint reports outside the scope of

14

the FCRA, the district court found that the Objectors' prospects of recovering statutory damages for a willful violation were "speculative at best," making release of those claims in exchange for substantial injunctive relief demonstrably fair and adequate. Id.

Finally, the district court approved incentive awards of $5,000 each for the Class Representatives and granted class counsel's motion for attorneys' fees, awarding $5,333,188.21 in connection with the (b)(2) Class settlement. Id. at *15-16. The Objectors timely appealed, challenging certification of the (b)(2) Class, approval of the Agreement, and the award of attorneys' fees.

## II.

The Objectors first challenge the district court's certification of the (b)(2) Class for settlement purposes. We review a district court's decision to certify a class only for "clear abuse of discretion." Flinn v. FMC Corp., 528 F.2d 1169, 1172 (4th Cir. 1975). An error of law or clear error in finding of fact is an abuse of discretion. Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 317 (4th Cir. 2006). But short of such error, we give "substantial deference" to a district court's certification decision, recognizing that a "district court possesses greater familiarity and expertise than

15

a court of appeals in managing the practical problems of a class action." Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 179 (4th Cir. 2010).

## A.

Under Rule 23(a) of the Federal Rules of Civil Procedure, a party seeking class certification, whether for settlement or litigation purposes, first must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Second, if the requirements of Rule 23(a) are met, then the proposed class must fit within one of the three types of classes listed in Rule 23(b). At issue here is Rule 23(b)(2), which permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[B]ecause of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests

16

among its members." Allison v. Citgo Petroleum Corp., 151 F.3d 402, 413 (5th Cir. 1998). Accordingly, Rule 23(b)(2) classes are "mandatory," in that "opt-out rights" for class members are deemed unnecessary and are not provided under the Rule. See id.; see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2558 (2011).

Federal circuits, including ours, have held that mandatory Rule 23(b)(2) classes may be certified in some cases even when monetary relief is at issue. See Thorn, 445 F.3d at 331; Allison, 151 F.3d at 413-14. Where monetary relief predominates, Rule 23(b)(2) certification is inappropriate. Thorn, 445 F.3d at 331-32. But where monetary relief is "incidental" to injunctive or declaratory relief, Rule 23(b)(2) certification may be permissible. Allison, 151 F.3d at 415; see also Dukes, 131 S. Ct. at 2560 (discussing Allison). This rule follows from the premise underlying the mandatory nature of Rule 23(b)(2) classes: If a class action is more about individual monetary awards than it is about uniform injunctive or declaratory remedies, then the "presumption of cohesiveness" breaks down and the procedural safeguard of opt-out rights becomes necessary. Allison, 151 F.3d at 413; see Eubanks v. Billington, 110 F.3d 87, 95 (D.C. Cir. 1997). And indeed, the Supreme Court clarified in Dukes that claims for individualized monetary relief – in that case, back-pay awards under Title VII

17

– are not "incidental" for purposes of Rule 23(b)(2) and may not be certified under that Rule. 131 S. Ct. at 2557.

**B.**

The Objectors' principal argument is that certification of the (b)(2) Class runs afoul of these limits. According to the Objectors, the statutory damages waived under the Agreement predominate over the injunctive relief awarded and are not of the "incidental" and non-individualized sort, see Dukes, 131 S. Ct. at 2557, 2560; Allison, 151 F.3d at 415, that may be certified under Rule 23(b)(2).[3]

We disagree. As the district court explained, this is a paradigmatic Rule 23(b)(2) case: The "meaningful, valuable injunctive relief" afforded by the Agreement is "indivisible," "benefitting all [] members" of the (b)(2) Class at once. Berry, 2014 WL 4403524, at *11. And the statutory damages claims released under the Agreement are not the kind of individualized claims that threaten class cohesion and are prohibited by Dukes. When it comes to statutory damages under the FCRA, what matters is the conduct of the defendant, Lexis – which, as the district court emphasized, "was uniform with

_____

[3] We can assume for purposes of this opinion that a class settlement that releases damages claims is on precisely the same footing under Rule 23(b)(2) and the Due Process Clause as one that provides for damages. We note, however, that Lexis contests that premise, and we do not decide its validity today.

18

respect to each of the class members." Id. at *12. The availability of statutory damages in this case, in other words, is a simple function of Lexis's policies with respect to its Accurint reports, applicable to the entire (b)(2) Class.[4] If Lexis unreasonably failed to treat Accurint reports as "consumer reports" subject to the FCRA, then every class member would be entitled uniformly to the same amount of statutory damages, set by rote calculation. Id.

Indeed, this settlement appears to be structured precisely to comply with Dukes and with Rule 23(b)(2). There are, to be sure, individualized monetary damages claims at issue here – those for actual damages under the FCRA – but those claims, as the district court emphasized, are retained by the (b)(2) Class members. Id. In contrast, the monetary claims released – those for statutory damages – "flow directly from liability to the class as a whole" on the same set of claims underlying the

---

[4] Like the district court, we find unpersuasive the Objectors' contention that the Adams decision, see supra at Section I.B., effectively divides the (b)(2) Class into two groups differently positioned with respect to willfulness: (1) class members whose claims arose after the Adams decision put Lexis on notice that its Accurint reports were subject to the FCRA, making those members eligible for statutory damages; and (2) class members whose claims arose before Adams put Lexis on notice. In fact, the Adams court did not rule that Accurint reports qualified as "consumer reports" under the FCRA, as it subsequently explained to the parties: "I think there has been some misinterpretation of what my [motion for judgment on the pleadings] ruling was." J.A. 2367.

19

injunctive relief, making them non-individualized under Dukes and "incidental" for purposes of Rule 23(b)(2). Dukes, 131 S. Ct. at 2560 (quoting Allison, 151 F.3d at 415) (emphasis in original).

The Objectors also argue that the statutory damages claims released by the Agreement cannot be deemed "incidental" to injunctive relief because the Plaintiffs' original complaint did not seek any injunctive relief under the FCRA. Again, we disagree.

We may assume, as did the district court, that the FCRA, which does not provide expressly for a private right of action for injunctive relief, does not permit consumers to seek injunctive remedies. But like the district court, we think that is beside the point: "[I]n the settlement context, 'it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all.'" Berry, 2014 WL 4403524, at *12 (quoting Local Number 93 v. City of Cleveland, 478 U.S. 501, 522 (1986)); see Sullivan v. DB Invs., Inc., 667 F.3d 273, 317 (3d Cir. 2011) (court may "approve a mutually agreed-upon stipulation enjoining conduct . . . regardless of whether the plaintiffs could have received identical relief in a contested suit"). And Lexis is free to agree to a settlement enforcing a contractual obligation that could not be imposed without its consent. Indeed, many FCRA class action disputes

20

are resolved in part through consent decrees. <u>See, e.g.</u>, <u>Serrano v. Sterling Testing Sys., Inc.</u>, 711 F. Supp. 2d 402, 409 (E.D. Pa. 2010).

Failing to acknowledge the critical role of the settlement agreement, the Objectors rely on authority from outside the settlement context that is unavailing here. Specifically, the Objectors point to decisions from the Fifth and Eleventh Circuits, each noting that the unavailability of injunctive relief under a statute would preclude certification of a Rule 23(b)(2) class. <u>See</u> <u>Christ v. Beneficial Corp.</u>, 547 F.3d 1292, 1298 (11th Cir. 2008); <u>Bolin v. Sears, Roebuck & Co.</u>, 231 F.3d 970, 977 n.39 (5th Cir. 2000). But in neither of those cases did the defendants agree to a settlement; instead, the defendants in both cases opposed certification. <u>Christ</u>, 547 F.3d at 1295-96; <u>Bolin</u>, 231 F.3d at 973. We can agree that in those circumstances, where the defendant is unwilling to settle and the relevant statute does not allow for injunctive relief, Rule 23(b)(2) certification would be inappropriate because the plaintiffs would have no prospect of achieving injunctive relief. But simply to describe those circumstances is to differentiate them from those before us now, where the (b)(2) Class members indeed will achieve substantial injunctive relief, by virtue of the parties' settlement, upon approval of the Agreement.

21

Nor does the failure of the Plaintiffs to seek injunctive relief in their original complaint independently preclude certification under Rule 23(b)(2). By its terms, Rule 23(b)(2) applies so long as "final injunctive relief . . . is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2) (emphasis added), and the corresponding Advisory Committee's Note likewise focuses on the "final relief" afforded in a Rule 23(b)(2) case, 39 F.R.D. 69, 102 (1966). We therefore look to the Agreement itself, and to the "final relief" it contemplates, to assess the propriety of any monetary remedy. Any other result would not only contravene the terms of Rule 23(b)(2), it would discourage settlement by binding plaintiffs to the choices they make at the earliest stages of litigation and foreclosing the kinds of remedial compromises necessary to achieve agreement.

That is not to say that the relief requested in a complaint may never inform the inquiry into whether monetary relief is truly "incidental" under Rule 23(b)(2). That inquiry is intended in part to guard against certification when an "injunction request is illusory," made only to justify a damages award that otherwise would be improper under Rule 23(b)(2). See Thorn, 445 F.3d at 329; Richards v. Delta Air Lines, Inc., 453 F.3d 525, 530 (D.C. Cir. 2006). So if, for instance, substantial monetary damages actually are awarded under a Rule

22

23(b)(2) class settlement, then the absence of a request for injunctive relief in the original complaint may give rise to concerns that it is the money and not the injunction that is driving the case. Cf. Hecht v. United Collection Bureau, Inc., 691 F.3d 218, 224 (2d Cir. 2012) (Rule 23(b)(2) certification invalid where complaint did not mention injunctive relief and "damages . . . [were] the only remedy awarded that clearly applied to every class member"); Fry v. Hayt, Hayt & Landau, 198 F.R.D. 461, 469 n.8 (E.D. Pa. 2000) (Rule 23(b)(2) certification inappropriate where plaintiff seeks substantial monetary judgment as part of settlement and did not seek injunction in original complaint). But here, where the only relief actually awarded to the (b)(2) Class is injunctive, those concerns are not present.

## c.

In the alternative, the Objectors argue that even if the statutory damages claims released by the (b)(2) Class are incidental and not predominant, due process precludes certification of the class without opt-out rights. Here, the Objectors rely on dicta from the Supreme Court's decision in Dukes, noting the "serious possibility" that due process requires opt-out rights (and concomitant notice) under Rule 23(b)(2) even "where the monetary claims do not predominate." Dukes, 131 S. Ct. at 2559. But as the district court explained,

23

the Supreme Court did not go that far in Dukes, holding instead only that claims for individualized monetary relief may not be certified under Rule 23(b)(2). Berry, 2014 WL 4403524, at *12. Like the district court, we decline to go where the Supreme Court has not.

As discussed above, federal courts long have permitted certification of mandatory Rule 23(b)(2) classes involving monetary relief so long as that relief is "incidental" to injunctive or declaratory relief – meaning that damages must be in the nature of a "group remedy," flowing "directly from liability to the class as a whole." Allison, 151 F.3d at 415; see id. at 411 (collecting cases). In such circumstances, our court has held, opt-out rights are not required because individualized adjudications are unnecessary. See Thorn, 445 F.3d at 330 & n.25 ("By requiring that injunctive or declaratory relief predominate . . . Rule 23(b)(2) ensures that the benefits of the class action inure to the class as a whole without running the risk of cutting off the rights of absent class members to recover money damages and class members who want individualized evaluation of their claim for money damages.").

We do not believe that the Court's dictum in Dukes warrants or even authorizes overturning this established precedent. See United States v. Ruhe, 191 F.3d 376, 388 (4th Cir. 1999) (Fourth Circuit panels are "bound by prior precedent from other panels

24

in this circuit absent contrary law from an en banc or Supreme Court decision"). And we note that our unwillingness to jump ahead of the Supreme Court in this regard is shared by our sister circuits. Two other federal courts of appeals have considered whether, in light of Dukes, Rule 23(b)(2) certification remains permissible when monetary damages are involved. And both have affirmed the continued validity of Rule 23(b)(2) certification of monetary claims so long as the monetary relief is non-individualized and "incidental" to injunctive or declaratory remedies. See Amara v. CIGNA Corp., 775 F.3d 510, 519-20 (2d Cir. 2014); Johnson v. Meriter Health Servs. Emp. Ret. Plan, 702 F.3d 364, 369-71 (7th Cir. 2012); see also Douglin v. GreatBanc Trust Co., No. 1:14-cv-00620-RA, 2015 WL 3526248, at *5-7 (S.D.N.Y. June 30, 2015).

To be sure, and as the district court recognized, when a "proposed settlement is intended to preclude further litigation by absent persons, due process requires that their interests be adequately represented." Berry, 2014 WL 4403524, at *11 (citing In re Jiffy Lube, 927 F.2d 155, 158 (4th Cir. 1991)). But the premise behind certification of mandatory classes under Rule 23(b)(2) is that because the relief sought is uniform, so are the interests of class members, making class-wide representation possible and opt-out rights unnecessary. See Dukes, 131 S. Ct. at 2558; Thorn, 445 F.3d at 330 & n.25; Allison, 151 F.3d at

25

413-14. And before a class may be certified under Rule 23(b)(2), of course, a court must find under Rule 23(a)(4) – as the district court did here – that the interests of all of the class members will be fairly and adequately represented by the named plaintiffs and class counsel. Rule 23(e)'s settlement approval process provides additional protection, ensuring that Rule 23(b)(2) class members receive notice of a proposed settlement and an opportunity to object, and that a "settlement will not take effect unless the trial judge – after analyzing the facts and law of the case and considering all objections to the proposed settlement – determines it to be fair, adequate, and reasonable." Kincade v. Gen. Tire and Rubber Co., 635 F.2d 501, 507-08 (5th Cir. 1981). We see no reason to depart here from the general understanding that these procedural safeguards are sufficient to protect the due process rights of objecting Rule 23(b)(2) class members.

Indeed, the particular terms of this Agreement make opt-out rights especially unnecessary here. The Dukes Court was concerned about the "need for plaintiffs with individual monetary claims to decide for themselves whether to tie their fates to the class representatives' or go it alone – a choice Rule 23(b)(2) does not ensure that they have." Dukes, 131 S. Ct. at 2559 (emphasis in original). But here, the right to "go it alone" is built into the Agreement itself, under which any

26

(b)(2) Class member may pursue actual damages resulting from individualized harm under the FCRA. In this sense, (b)(2) Class members are "opted out" already, by virtue of the settlement in question. As the district court explained, the Agreement "preserves Rule 23(b)(2) class members' rights to bring claims for actual damages, thereby preserving their due process rights." Berry, 2014 WL 4403524, at *12.

Finally, the practical implications of the Objectors' position give us pause. What is being sought is a blanket right to opt out of a Rule 23(b)(2) settlement that provides purely injunctive relief solely because non-individualized statutory damages claims are released, while individualized actual damages claims are retained. That such a rule would discourage settlement seems undeniable; defendants like Lexis surely will not agree to settlements like this one if they cannot buy something approaching global peace. See Kincade, 635 F.2d at 507. And in light of all the other procedural protections already in place, not to mention the retention of actual damages claims under this Agreement, any marginal benefit that might accrue to disenchanted class members is unlikely to be worth this cost. As the Supreme Court has recognized, procedural due process is a "flexible concept," requiring varying degrees of protection "depending upon the importance attached to the interest and the particular circumstances under which the

27

deprivation may occur." Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 320 (1985). We do not think it requires the rigid opt-out rule proposed by the Objectors here.

**D.**

We briefly address the Objectors' final argument against certification: that the (b)(2) Class's representation is inadequate under Rule 23(a)(4) because monetary payments of $5,000 to each Class Representative created a conflict of interest between those Representatives and the rest of the class. Though we appreciate that such awards can misalign the interests of class representatives and other class members in certain circumstances, we hold that the district court did not abuse its discretion in approving the payments here.[5]

Incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). They are "fairly typical in class action cases." Id. at 958 (quoting 4 William B.

---

[5] Nor do we find any abuse of discretion in the district court's judgment that the (b)(2) Class members otherwise were represented adequately under Rule 23(a)(4). To the extent the Objectors argue to the contrary, we find their claims unpersuasive.

Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed. 2008)). The district court found that awards of $5,000 were appropriate here because the Class Representatives acted for the benefit of the class, and it cited other cases in which district courts in our circuit have ordered similarly substantial payments.

The Objectors point us to cases from other circuits scrutinizing such awards when a "settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members," In re Dry Max Pampers Litig., 724 F.3d 713, 718 (6th Cir. 2013). And it is true that when incentive agreements are entered into at the onset of litigation, see Rodriguez, 563 F.3d at 959, and particularly when they are conditioned on class representative support for a settlement, Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1164 (9th Cir. 2013), large awards may raise concerns about whether named plaintiffs might "compromise the interest of the class for personal gain," Dry Max Pampers, 724 F.3d at 722 (quoting Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003)).

In this case, however, the incentive awards were not agreed upon ex ante, and they were not conditioned on the Class Representatives' support for the Agreement. Indeed, they were not negotiated until after the substantive terms of the Agreement had been established, making it significantly less

29

likely that the Class Representatives would have been influenced in the performance of their representative duties. And finally, this is not a case in which unnamed class members received "only perfunctory relief," see Dry Max Pampers, 724 F.3d at 718, – instead, the district court found that the class members were afforded substantial relief by significant changes in Lexis's consumer-protection practices – and there is no indication that the highly experienced class counsel pursued this lawsuit any less vigorously because of the Class Representatives' fee award. Under these circumstances, we defer to the judgment of the district court in approving the Class Representatives' awards and finding adequate representation under Rule 23(a)(4).

## III.

The Objectors next challenge the district court's approval of the (b)(2) Class settlement, arguing principally that it is unfair and inadequate because it releases class members' statutory damages claims without providing for any monetary relief in exchange. Again, we afford the district court's decision substantial deference, reversing only "upon a clear showing that the district court abused its discretion in approving the settlement." Flinn, 528 F.2d at 1172 (citations and internal quotation marks omitted).

30

**A.**

As discussed above, a key procedural protection afforded Rule 23(b)(2) class members is that a settlement will not be approved over their objections unless a district court finds it to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); see In re Jiffy Lube, 927 F.2d at 158. The fairness analysis is intended primarily to ensure that a "settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion." In re Jiffy Lube, 927 F.2d at 159.

The district court properly considered the factors we have identified as bearing on this inquiry: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [FCRA] class action litigation." Id. Noting the "extensive discovery" conducted through the course of three separate lawsuits, the district court concluded that the parties here "reached an agreement through arm's-length negotiations by highly experienced counsel after full discovery was completed," sufficient to demonstrate the fairness of the Agreement. Berry, 2014 WL 4403524, at *14. The Objectors do not and could not take serious issue with this assessment, and we see no reason to disturb the court's judgment.

31

As to the Objectors' primary complaint – that the Agreement is inadequate because it fails to provide any monetary compensation for the release of statutory damages claims – the district court emphasized the most important factor in weighing the substantive reasonableness of a settlement agreement: the "strength of the plaintiffs' claims on the merits." Flinn, 528 F.2d at 1172. In other words, the fairness of a deal under which class members give up statutory damages claims in exchange for injunctive relief depends critically on an assessment of the Plaintiffs' case that they are entitled to statutory damages in the first place.

The district court deemed that case "speculative at best," Berry, 2014 WL 4403524, at *15, and we think that is generous. In order to recover statutory damages under the FCRA, the Plaintiffs would have to show a "willful" violation by Lexis, 15 U.S.C. § 1681n, which in turn would require that Lexis have adopted an "objectively unreasonable" reading of the Act when it concluded that its Accurint reports were not covered as "consumer reports." Safeco, 551 U.S. at 69. As the district court noted, the Supreme Court has made clear that where "the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation . . . a defendant who merely adopts one such interpretation" cannot be held liable as a willful violator. Id. at 70 n.20. And here, with agency

32

guidance expressly specifying that Accurint reports are <u>not</u> subject to the FCRA, <u>see</u> FTC Opinion Letter, it is hard to see how Lexis can be said to have acted unreasonably by adopting that reading.[6]

On the other side of the ledger, of course, is the benefit to the (b)(2) Class of "substantial [injunctive] relief without the risk of litigation." <u>Berry</u>, 2014 WL 4403524, at *15. The district court described the injunction in this case as implementing a "substantial, nationwide program that addresses the issues raised in the Complaint by the [(b)(2) Class] and will result in a significant shift" in industry practices, making Lexis "the industry leader" in consumer-information protection. <u>Id.</u> at *3. Indeed, the record includes a finding by an information privacy law expert that the injunctive relief provided in the Agreement provides consumers with benefits so substantial that their monetary value is in the billions of dollars. The Objectors' exclusive focus on the absence of <u>monetary</u> relief is unsupported by law and also imprudent as a matter of common sense: There was no realistic prospect that

---

[6] Nothing about the <u>Adams</u> litigation dictates a different result. Although the district court in that case denied Lexis's motion for judgment on the pleadings on the willfulness issue, it subsequently clarified on reconsideration that it was "very persuaded by the FTC's letter," J.A. 2377, and that if "the plaintiffs don't come forward with authority to the contrary . . . then . . . [they] have a difficult row to hoe," J.A. 2368.

33

Lexis could or would provide meaningful monetary relief to a class of 200 million people.[7]

We can find no reason to disturb the district court's assessment of the relative strength of the parties' legal positions or its fact-intensive analysis of the benefits provided the (b)(2) Class by the parties' settlement. In our view, the district court was well within its discretion in approving the settlement as fair, reasonable, and adequate under Rule 23(e).

**B.**

The Objectors bring one final challenge to the settlement, arguing that it impermissibly immunizes Lexis from future FCRA liability in connection with its new Contact & Locate product. We disagree.

The Objectors' claim appears to rest on two sections of the Agreement. In the first, the parties stipulate that "the

---

[7] For that reason and others, the fact that the much smaller (b)(3) Class received monetary relief under the Agreement does not by itself render unreasonable the non-monetary relief provided the (b)(2) Class. The (b)(3) Class, unlike the (b)(2) Class, consists of individuals who took some affirmative action against Lexis, seeking to view their Accurint reports or challenging information included in those reports, putting them in a fundamentally different position with respect to Lexis. And in exchange for the monetary relief provided by the Agreement, the (b)(3) Class releases all of its damages claims against Lexis, while the (b)(2) Class retains the right to sue for actual damages.

34

Contact & Locate suite of products and services will not involve the provision of 'consumer reports' as that term is defined under the FCRA." J.A. 120-21. In the second, the parties "acknowledge that the specific design and content of the Contact & Locate . . . suite of products and services may change over time to respond to the then current requirements of customers and the market." J.A. 122. According to the Objectors, the upshot is that Lexis has carte blanche to develop Contact & Locate into a product that is indeed a "consumer report" under the FCRA, while class members, bound by their stipulation, will be unable to respond.

We think that significantly overstates Lexis's freedom under the Agreement. It is true that the Agreement provides Lexis the discretion it needs to develop Contact & Locate according to market needs. But as the district court explained, it also sets boundaries for the design and implementation of Contact & Locate, which assure that the product cannot operate as a "consumer report" for purposes of the FCRA. Under the Agreement, for instance, Contact & Locate may include only information that does not contain any of the "seven characteristic" consumer information covered by the FCRA. J.A. 121; Berry, 2014 WL 4403524, at *4. And in the section of the Agreement labeled the "Rule 23(b)(2) Settlement Class Release," J.A. 129, the parties clarify that their agreement is only that

35

the "Post Settlement Products" (of which Contact & Locate is one) "shall not be 'consumer reports' within the meaning of the FCRA <u>so long as [they] are not used in whole or in part as a factor in determining eligibility for credit</u>" or any other purpose that could qualify them as consumer reports. J.A. 132-33 (emphasis added). Under that provision, Lexis has no free pass from FCRA liability; instead, the Agreement applies only so long as Contact & Locate remains true to the parties' intent and is not used in a manner that would make it a "consumer report."

Releases, of course, are a standard feature of class action settlements. Indeed, the release of claims that form the basis of litigation is the raison d'être of any settlement, so the Objectors do not dispute that it would have been appropriate for the (b)(2) Class to stipulate that Lexis's Accurint reports comply with the FCRA. But it is different and unreasonable, they argue, to release claims regarding Contact & Locate, because Contact & Locate does not yet exist. Again, we think this overstates the case. Contact & Locate is a new name, but it is a new name for what is essentially a scaled-down version of the old Accurint reports, without the features that allegedly made Accurint troublesome under the FCRA. In class action settlements, parties may release not only the very claims raised in their cases, but also claims arising out of the "identical factual predicate." <u>See, e.g.</u>, <u>In re Literary Works in Elec.</u>

Databases Copyright Litig., 654 F.3d 242, 248 (2d Cir. 2011). Although the name of the product has changed, now, as before, Lexis attempts only to sell information that will enable debt collectors to locate assets, and not information to be used for credit eligibility determinations. Because the (b)(2) Class can release claims against Accurint, it can do so for Contact & Locate, as well.

## IV.

We are left with one final argument: a challenge by one (and only one) Objector[8] to the district court's approval of class counsel's approximately $5.3 million fee for securing injunctive relief for the (b)(2) Class. Federal Rule of Civil Procedure 23(h) permits "the court [to] award reasonable attorney's fees . . . that are authorized by . . . the parties' agreement." Fed. R. Civ. P. 23(h). We review attorneys' fee awards for abuse of discretion only. Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628 (4th Cir. 1995). That review is "sharply circumscribed," and a fee award "must not be overturned unless it is clearly wrong." Plyler v. Evatt, 902 F.2d 273, 278 (4th Cir. 1990) (internal quotation marks omitted).

---

[8] Objector Schulman is the only Objector and member of the 200 million-member (b)(2) Class to contest the award of fees in this case.

37

Here, class counsel's fee was negotiated by the parties, and the Agreement allowed for a total attorneys' fee award of up to $5.5 million to be paid entirely by Lexis. The district court awarded the requested fee after analyzing it through the lodestar method. With regard to the Rule 23(b)(2) Class settlement, the district court found that "a lodestar of $3,349,379.95 and a multiplier of 1.99 are applicable and, in light of the fact that counsel allocated approximately 80% of their time to crafting injunctive relief for the Rule 23(b)(2) class, an award of $5,333,188.21 is appropriate."[9] Berry, 2014 WL 4403524, at *15. Objector Schulman argues primarily that the district court's explanation for its fee award was insufficiently detailed and, in particular, that the court failed to respond to his protests that class counsel's hourly rate and number of hours worked were unreasonable. And indeed, despite our very deferential review in this area, we do require district courts to set forth clearly findings of fact for fee awards so that we have an adequate basis to review for abuse of discretion. See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226

---

[9] Under the lodestar method, the district court multiplies the number of hours worked by a reasonable hourly rate. And it can then "adjust the lodestar figure using a 'multiplier' derived from a number of factors, such as the benefit achieved for the class and the complexity of the case." Kay Co. v. Equitable Prod. Co., 749 F. Supp. 2d 455, 462 (S.D.W. Va. 2010).

(4th Cir. 1978) (adopting the twelve fee-shifting factors of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), whenever the district court is required to determine reasonable attorneys' fees).

We acknowledge that the district court's explanation of its fee award was brief, compressed into a single paragraph. And we stress the importance of addressing fee requests fully and carefully, so that we may engage in meaningful review. See Blankenship v. Schweiker, 676 F.2d 116, 118 (4th Cir. 1982) (vacating fee award where district court did not engage in thorough review). On balance, however, and under the circumstances of this case, we think that the district court's explanation was sufficient and that the court did not otherwise abuse its discretion in approving the fee award.

The district court provided the specific basis on which it awarded fees: that class counsel "expended large amounts of time and labor," and "achieved an excellent result in this large and complex action." Berry, 2014 WL 4403524, at *15. It went on to detail why the result was indeed "excellent," finding that the Agreement "provides substantial benefits for over 200 million consumers" and "forces [Lexis] to comply with the FCRA." Id. And the court compared the lodestar multiplier to those applied in similar cases. That explanation is in accord with several of the more prominent Barber factors, which "include such

39

considerations as the time and labor required, the novelty or difficulty of the issues litigated, customary fees in similar situations, and the quality of the results involved." In re MRRM, P.A., 404 F.3d 863, 867-68 (4th Cir. 2005).

As to the reasonableness of class counsel's hourly rate, it is not the case, as Objector Schulman would have it, that the court erred by relying solely on counsel's affidavit as evidence of prevailing market rates. On the contrary, the record contains multiple expert opinions, all backed by voluminous evidence, that both counsel's hourly rate and the time spent on the case were reasonable. The district court's findings rest not on unsupported and self-serving assertions from counsel, but on the testimony of experts like Professor Geoffrey Miller, comparing class counsel's rates to those charged in bankruptcy litigation as well as to rates awarded in similar class action cases, and opining that counsel's attestations to the time incurred were consistent with the complexity and the duration of the litigation. The court's reference to "large amounts of time and labor" may have been brief, but it was backed by substantial evidence on which the court was entitled to rely.

Moreover, this case does not raise the kind of concerns that might call for an especially robust or detailed explanation of a fee award by a district court. There is no reason to worry here that "the lawyers might [have] urge[d] a class settlement

40

at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." See Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 524 (1st Cir. 1991). As discussed above, given the size of the (b)(2) Class and the fragility of its legal position, there was never any realistic possibility of class-wide monetary relief; put bluntly, there is no reason to think that class counsel left money on the table in negotiating this Agreement. And it is not as if the injunctive relief ultimately achieved for the (b)(2) Class was below expectations. Again, the district court's assessment of the injunction as an "excellent result in [a] large and complex action" may have been on the terse side, but it is amply supported by the experts who opined on the fee award, characterizing the injunction as bringing about a "sea change" in business practices, J.A. 2015-16, and as a "serious advancement of consumer rights by a dominant member of the data broker industry," J.A. 583. See McDonnell v. Miller Oil Co., 134 F.3d 638, 641 (4th Cir. 1998) (finding that the "most critical factor in calculating a reasonable fee award is the degree of success obtained" (internal quotation marks omitted)).[10]

---

[10] Other features of this case further diminish any concern about the fee award and, accordingly, any need for heightened scrutiny by the district court. Because class counsel's fee is to be paid entirely by Lexis, it does not reduce the (b)(2) Class's recovery. Cf. Cook v. Niedert, 142 F.3d 1004, 1011 (7th

41

Finally, the fact that only one of the approximately 200 million members of the (b)(2) Class objects to the award of attorneys' fees is relevant to our decision. Notice of the proposed settlement in this case reached 75.1 percent of the (b)(2) Class members, but only Objector Schulman raised any concerns; indeed, the other Objectors specifically declined to join this portion of the challenge. That almost complete lack of objection to the fee request provides additional support for the district court's decision to approve it. See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005) (noting that only two of 300,000 class members objecting to fee request is a "rare phenomenon" and evidence that the district court did not abuse its discretion in awarding fees); see also Flinn, 528 F.2d at 1174 (finding class action settlement reasonable where "[o]nly five members of the class filed any dissent from the settlement").

---

Cir. 1998) (when attorneys' fee reduces amount of common fund, court must carefully scrutinize fee application). Nor, of course, will it require the expenditure of taxpayer funds, which might warrant additional scrutiny. Cf. Perdue v. Kenny A., 559 U.S. 542, 559 (2010) (limiting the use of multipliers in lodestar-based fee awards against the government under fee-shifting statutes). Finally, the parties did not even begin to negotiate class counsel's fee until after the substantive terms of the Agreement were finalized, making it far less likely that counsel could have traded off the interests of class members to advance their own ends.

Again, we should not be understood to minimize the need for district courts to explain their attorneys' fee awards and to take account of relevant objections. But on the facts of this case, we find that the district court satisfied that standard, and committed no abuse of discretion in awarding attorneys' fees to class counsel in connection with the (b)(2) Class settlement.

## V.

For the reasons set forth above, we affirm the decision of the district court.

AFFIRMED